IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY COOKS, | § | |
| | § | |
| v. | § | Case No. 2:11-cv-054 |
| | § | |
| EVELYN CASTRO, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Anthony Cooks, a former Texas state prisoner, is suing certain employees of the Texas Department of Criminal Justice, Criminal Institutions Division  ("TDCJ-CID") alleging that defendants violated his constitutional rights when he was housed at the McConnell Unit in Beeville, Texas.  In particular, plaintiff claims that defendants failed to protect him from an assault by another inmate, and failed to transfer him from the McConnell Unit, despite threats against him from other offenders and even staff.

Defendants move for summary judgment to dismiss plaintiff's claims  on the grounds of (1) failure to exhaust administrative remedies; (2) failure to establish cognizable constitutional violations; and (3) qualified immunity.  (D.E. 39).

For the reasons stated herein, it is respectfully recommended that the Court grant summary judgment in defendants' favor and dismiss plaintiff's claims with prejudice.

**I.    Jurisdiction.**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.     Procedural background.

While at the McConnell Unit, on February 28, 2011, plaintiff filed his original complaint alleging numerous constitutional violations against nineteen individual defendants. (D.E. 1).

On April 20, and May 19, 2011, a Spears[1] hearing was conducted, following which, it was recommended that certain of plaintiff's claims and defendants be dismissed, but that plaintiff's failure to protect claims be retained against Major Evelyn Castro, Major Adam Gonzales, Sergeant Joe Mireles, Lieutenant Louis Garcia, and Lieutenant Michelle Cabrera. (D.E. 16).  It was recommended also that the Court retain plaintiff's excessive force claims against Lieutenant Garcia, Lieutenant Cabrera, and Officer Kevin Thompson.  Id.

On May 27, 2011, plaintiff was released from TDCJ-CID custody.  (D.E. 18).

On July 19, 2011, defendants filed their answer and raised the defense of qualified immunity.  (D.E. 30).

On August 22, 2011, plaintiff filed a motion to transfer the case to the Houston Division based on his allegation that attorneys in Houston did not want to take his case because of the distance to Corpus Christi.  (D.E. 34).  Plaintiff's motion for a transfer was denied.  (D.E. 35).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

2

By order entered December 7, 2011, defendants were given until December 19, 2011 to file their motion for summary judgment, and plaintiff was advised that he had until January 18, 2012, to file a summary judgment response.  (D.E. 38).

On December 19, 2011, defendants filed the instant motion for summary judgment. (D.E. 39).

To date, plaintiff has not filed a response to defendants' summary judgment motion.

**III.     Summary judgment evidence.**

In support of their motion for summary judgment, defendants offer the following evidence:

| | |
|---|---|
| Ex. A: | Relevant portions of plaintiff's grievance records; |
| Ex. B: | Relevant portions of plaintiff's Offender Protection/Life in Danger records;[2] |
| Ex. C: | TDCJ Ombudsman Inquiry Response dated 11/9/10; |
| Ex. D: | TDCJ Ombudsman Inquiry Response dated 12/13/10; |
| Ex. E: | Affidavit of Evelyn Castro; |
| Ex. F: | Affidavit of Adam Gonzales; |
| Ex. G: | Affidavit of Joe Mireles; |
| Ex. H: | Affidavit of Louis Garcia; and |
| Ex. I: | Affidavit of Kevin Thompson. |

_____

[2] Reference to defendants' summary judgment motion (D.E. 39) is to "DSJ" followed by an exhibit letter and page or paragraph number, as appropriate.

The summary judgment evidence establishes the following:

Until his transfer in April 2011, plaintiff had been assigned to the McConnell Unit for the past five years, and had been housed in administrative segregation ("ad. seg."). On an unspecified date, plaintiff alerted prison officials that certain McConnell Unit officers and staff were conspiring with inmates belonging to Security Threat Groups ("STG") to smuggle contraband, including cell phones and narcotics, into ad. seg. After alerting authorities of the illegal activities, plaintiff was viewed as a "snitch" by both STG members and certain McConnell Unit employees.

On November 4, 2010, plaintiff filed a life in danger ("LID") claim alleging that he had almost been physically assaulted that same day by Offender Shoefstall, an offender affiliated with the STG Aryan Brotherhood of Texas ("ABT"). (DSJ Ex. A at 6 - 21). In his LID, claimed that he was in fear for his life in ad. seg. due to "ABT, Tango Blast, Mexican Mafia, and ACT" gang members attempting to assault him. Id. at 8, 10.

An offender protection investigation ("OPI") was initiated by Lieutenant Stroleny. (DSJ Ex. A at 6, 12- 14). The investigation confirmed that, as plaintiff was being escorted to the shower, Offender Shoefstall, who was in the E-section dayroom, shot a spear at plaintiff using a homemade sling shot. Id. at 16. The sling shot broke and plaintiff was not hit by the spear. Id. Officer Valdarrama witnessed the attempted assault and immediately escorted plaintiff out of the area for his safety. Id. Plaintiff was taken to medical, where no injuries were noted, and he was then placed in transient status pending the OPI. Id.

Offender Shoefstall admitted to the attempted assault on plaintiff, and he told Lieutenant Stroleny that other offenders were also "out to get" plaintiff.  Id.  Plaintiff told Lieutenant Stroleny that, in addition to STG members, certain staff members were "out to get him" because he told prison administrators about "dirty officers."  Id.  Lieutenant Stroleny noted that plaintiff had filed numerous OPIs in the past six months and she recommended that plaintiff be granted a unit transfer.  Id. at 18.  Major Gonzales concurred with Lieutenant Stroleny's recommendation.  Id. at 17.

On November 9, 2010, a hearing was held before a Unit Classification Committee ("UCC") on plaintiff's request for a unit transfer and the OPI investigation.  (DSJ Ex. A at 17).  Major Gonzales was the UCC chairperson, and the McConnell UCC recommended that plaintiff be granted a unit transfer.  Id.

Also on November 9, 2010, plaintiff filed a Step 1 grievance, Grievance No. 2011040936,  stating that his LID claims had not been properly investigated and that he did not feel safe.  (DSJ Ex. A at 3-4).  It is not clear whether plaintiff filed this grievance before or after the UCC hearing, but on November 13, 2011, Warden Jackson denied Grievance No. 2011040936 noting that the UCC had recommended a unit transfer.  (DSJ Ex. A at 4).  Plaintiff filed a Step 2 appeal and it was denied.  Id. at 1-2.

On November 11, 2010, plaintiff filed another Step 1 grievance, Grievance No. 2011047536 (DSJ Ex. A at 24-25).  This would have been filed two days after the UCC recommended a transfer.  Although it is difficult to understand the nature of plaintiff's complaint in this grievance, he does seem to recognize that a transfer had been

5

recommended, but he was afraid it would not be granted. He stated "Huntsville do not grant transfer of this nature am appealing right away because it should be a transfer . . ." (DSJ Ex. A at 24). In response to the grievance, Plaintiff was advised that the McConnell UCC was still waiting a decision from the State Classification Committee ("SCC") regarding the transfer recommendation. Id. at 25.

On November 23, 2010, the SCC denied a transfer request finding that, because plaintiff was assigned to ad. seg., the staff should have no problem controlling plaintiff's movement and providing him with adequate protection. (DSJ Ex. A at 30). The response to plaintiff's Step 2 Grievance No. 2011047536 reflected that the SCC had denied the transfer request Id. at 27.

On November 17, plaintiff filed a Step 1 grievance, Grievance No. 2011050702, alleging that on November 17, 2010 at 6:00 p.m., Officer Thompson assaulted him by grabbing his arms and hands through the food slot, and punching him in the face.[3] (DSJ Ex. A at 68-69). An investigation was opened concerning plaintiff's excessive force claim against Officer Thompson. Id. at 71-78. Grievance investigator T. McCullough reported that, on November 17, 2010, plaintiff was seen in medical for "an open area to right forearm;" however, there was no use of force report filed for that day concerning an incident with plaintiff. Id. at 78. Captain Rodriguez interviewed Officer Thompson by phone. Id.

---

[3] Although plaintiff claims that the food slot assault occurred on November 17, 2010, internal investigation documents identify the date as both November 17, and November 22, 2010. There is evidence also that incidents involving the food tray slot might have occurred on numerous dates. (See DSJ Ex. I, Thompson Aff't at ¶ 4).

at 74-75.  Officer Thompson testified that plaintiff refused to remove his arms from the food

slot, and, as a result, he was not given a meal.  Id.  In addition, Officer Thompson gave

plaintiff a disciplinary case for failing to obey an order.  Id.  Plaintiff refused to talk to

Captain Rodriguez about the incident, stating that he would instead talk to the disciplinary

hearing officer.  Id.  The investigation was closed on December 30, 2010, with no action

taken against Officer Thompson.  Id. at 71.

On December 1, 2010, plaintiff filed a Step 1 grievance, Grievance No. 2011056212,

challenging the SCC's denial of a transfer and alleging further that his life was still in danger

and that his LID claims had not been properly investigated.   (DSJ Ex. A at 34-35, 49).

Lieutenant Cabrera initiated an OPI that same day.  Id. at 41-44.  Plaintiff told Lieutenant

Cabrera that he still believed his life was in danger because "he was surrounded by ABT and

they could be anywhere;" however, he admitted that he had not been threatened since the

November 4, 2010 incident.  Id. at 46.  Lieutenant Cabrera reviewed the facts of the

November 4, 2010 attempted assault and noted that, since the incident, plaintiff had been

moved to 12 Building, E pod, 58 cell, away from Offender Shoefstall who was housed on F

pod.  Id.  As of December 2, 2010, plaintiff was now in 12 Building, E pod, 68 cell, and no

additional attempts had been against him.  Id.  Lieutenant Cabrera noted that the SCC found

plaintiff was adequately protected as assigned to "maximum security administrative

segregation,"  and she recommended that his LID claim be denied.  Id. at 44, 46.

On December 3, 2010, defendant Sergeant Mireles, working as an investigator with

the McConnell Unit STG Office ("STGO"), reported that Offender Shoefstall was a

7

confirmed ABT member; however, at the time of the investigation, the STGO had no new information concerning threats against plaintiff.  (DSJ Ex. A at 47).

On December 8, 2011, a UCC was held on plaintiff's December 1, 2010 grievance/LID claim, at which Major Gonzales presided as chairperson.  (DSJ Ex. A at 40). Based on the OPI of Lieutenant Cabrera and the STGO report, the UCC denied plaintiff's grievance/LID claim, and denied a transfer.[4]  Id. at 40, 45.

On December 10, 2010, plaintiff filed an LID claiming that his life was in danger due to various gang members.[5]  (DSJ Ex. A at 56, 62).  Lieutenant Garcia initiated an OPI.  Id. at 58-63.  Plaintiff told Lieutenant Garcia that he had problems with both McConnell Unit staff, as well as members of STGs, including the ABT  and the Crips.  Id. at 62.  Plaintiff indicated that he was not a member of the Mandingo Warriors, but that ABT members believed him to be a member.  Id.  Plaintiff told Lieutenant Garcia about the November 4, 2010 attempted assault with the spear and noted that Offender Shoefstall was affiliated with the ABT.  Id.  Plaintiff complained that, each time he left his cell to be interviewed in connection with an OPI, other offenders make statements suggesting that he was meeting

---

[4] On December 21, 2010, Warden Jackson denied Grievance no. 2011056212.  (DSJ Ex. A at 35).  Plaintiff filed a Step 2 appeal, and it was denied at the regional level.  Id. at 33-34.

[5] Also on December 10, 2010, plaintiff filed two Step 1 grievances: Grievance No. 2011062181, complaining about the past denial of OPIs  (DSJ Ex. A at 51-52); and Grievance No. 2011062200, ostensibly appealing the SCC's denial of a transfer.  (DSJ Ex. A at 83-84).  On December 29, 2010, Warden Crites denied Grievance No. 2011062181, and the Step 2 appeal was also denied.   Id. at 52, 49-50.  On January 12, 2011, Warden Crites denied Grievance No. 2011062200, and on February 22, 2011, plaintiff's Step 2 appeal of this grievance was denied by the regional office.  Id. at 81-82.

8

with prison officials to "snitch."  Id.  Plaintiff admitted that he had no new incidents with other offenders, but he indicated that he was having problems with the McConnell Unit administration and medical staff, and he complained that he had not been receiving his psychiatric medications for the past six months.  Id.   Indeed, the medical department confirmed that plaintiff was not receiving his psych medications because "he was caught by security staff attempting to sell [them]," so the medications were suspended.  Id..  Plaintiff also complained that unidentified security staff were telling known STG members that he was a snitch and that staff was "messing" with him.  Id.  Plaintiff admitted that he had not been assaulted physically or sexually, nor had he been extorted.  Id.

Lieutenant Garcia concluded that there were no new threats against plaintiff, and characterized his true complaint to be the denial of his OPIs and of a unit transfer.  (DSJ Ex. A at 62).  Lieutenant Garcia found no evidence to substantiate plaintiff's LID claims, and he forwarded his report to the UCC.  Id. at 62-63.

On December 16, 2010, the UCC denied plaintiff's OPI due to lack of evidence. (DSJ Ex. A at 64, 57).

On January10, 2011, plaintiff filed a Step 1 grievance, Grievance No. 2011062182, stating that he wanted his LID claims to be taken seriously and his claims investigated properly.  (DSJ Ex. A at 51-52).  In response, on January 24, 2011, an investigation was initiated by grievance investigator K. Tollette.  Id. at 54-55.   Investigator Tollette reviewed the December 10, 2010 OPI by Lieutenant Garcia, and spoke to B. Holcombe, a classification manager who was present at the December 16, 2010 UCC.  Id. at 54, 57.  On January 24,

2011, Investigator Tollette concluded that the grievance should be denied and plaintiff was informed:

> Your complaint has been noted and appropriately addressed at step one. Your committee hearings are conducted within agency guidelines. There is no evidence to support your allegations that staff is telling other offenders that you are a snitch, nor is there any evidence that staff are allowing offenders to assault you. Incidents involving a use of force against you are under review by the regional Use of Force office. No further action warranted.

(DSJ Ex. A at 54).

Plaintiff's Grievance no. 2011062182 was denied, as was his Step 2 appeal. (DSJ Ex. A at 51-52, 49-50).

In November and December 2010, the TDCJ Office of Ombudsman investigated plaintiff's allegations against McConnell Unit staff that his OPIs were not investigated properly, that he was harassed by staff, and that he was not safe on the McConnell Unit. (See DSJ Ex. C, Ex. D).

On March 24, 2011, a McConnell UCC recommended that plaintiff be transferred off of the McConnell Unit, and in April 2011, he was transferred. (D.E. 12).

## IV.     Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court

must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations

11

of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

## V.   Defendants' summary judgment motion.

### A.   Exhaustion.

Defendants first move for summary judgment to dismiss plaintiff's claims against them on the grounds that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e of the Prison Litigation Reform Act ("PLRA").

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

12

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). The Fifth Circuit requires that both steps be completed in order to file suit in federal court. Johnson v. Johnson, 385 F.3d 503, 515-16 (5th Cir. 2004).[6]

---

[6] Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the issue he is complaining about. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance. Wendell, 162 F.3d at 891. Once the two-step process has been completed, the offender's administrative remedies within the TDCJ have been exhausted. See http://www.tdcj.us/publications/admin-rvw/Offender%20Grievance%20pamphlet%202007.pdf. Thereafter, an inmate dissatisfied with the disposition of his Step 2 grievance may file suit in district court. See 42 U.S.C. § 1997e(a).

The summary judgment evidence establishes that, during November and December 2010, plaintiff filed six (6)  Step 1 grievances complaining that his life was in danger, that his OPIs had not been investigated properly, and that he was not safe on the McConnell Unit.[7]  Indeed, the following Step 1 grievances were filed on the following dates:

| Grievance # | Date filed | Issue | Exhibit |
|---|---|---|---|
| 2011040936 | 11/04/10 | LID | DSJ Ex. A at 1-4 |
| 2011047536 | 11/11/10 | Appeal of UCC | DSJ Ex. A at 22-25 |
| 2011050702 | 11/17/10 | excessive force | DSJ Ex. A at 66-69 |
| 2011056212 | 12/01/10 | LID, staff assault | DSJ Ex. A at 32-35 |
| 2011062182 | 12/10/10 | LID | DSJ Ex. A at 49-52 |
| 2011062200 | 12/10/10 | Appeal of SCC's decision | DSJ Ex. A at 81-84 |

Defendants Major Castro, Major Gonzales, Lieutenant Cabrera, Lieutenant Garcia, and Sergeant Mireles argue that plaintiff has failed to exhaust his failure to protect claims against them because he did not specifically identify them in any Step 1 grievance, nor did he identify the specific conduct which he claims to be unconstitutional.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance to exhaust administrative remedies, and noted:

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally."  Thus,

---

[7] There is no dispute that plaintiff successfully filed Step 2 appeals of each grievance.

> a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit.  Further, as a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining.  If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know – and a prisoner could ordinarily be expected to provide – details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter.  In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that prices in the commissary are too high, could adequately alert administrators to the problem whether the grievance names anyone.

Id. at 517 (citations omitted).

Defendants contend that plaintiff did not identify them individually or detail the actions that plaintiff contends constitute failure to protect.  However, although plaintiff may not have identified the defendants by name, he did identify them by rank or job position.  Indeed, he complained about the "majors" who presided at his UCC (Castro and Gonzales); the lieutenants that investigated his LID (Garcia and Cabrera); and the  STGO officer who submitted his findings (Sergeant Mireles).  Each of these defendants was intimately involved in plaintiff's LID claims, the OPI investigations and/or classification hearings, and his grievances are sufficiently detailed to have put these defendants on notice that plaintiff was not satisfied with the steps being taken to ensure his safety.  Therefore, it is respectfully recommended that the Court find that plaintiff exhausted his failure to protect claims and that defendants' motion for summary judgment to dismiss those claims be denied.

Plaintiff has also alleged claims of excessive force against Lieutenant Cabrera, Lieutenant Garcia, and Officer Thompson.  He claims that on November 11, 2010, he was on his way to an OPI hearing, when Lieutenant Garcia sprayed him with chemical agents, with no orders or warning beforehand.  (D.E. 16 at 9).  He claims that on November 17, 2010, Officer Thompson pulled and twisted his arm through the food slot, and then punched him in the face.  Id.  He claims that on November 24, 2010, Lieutenant Cabrera accused him of having his foot in the food tray slot, and she sprayed him three times with chemical agents, without first giving him a command or an opportunity to comply with a direct order.  Id.

A review of plaintiff's November and December grievances reveals that plaintiff did file a grievance complaining about Officer Thompson in which he alleged excessive force. (DSJ Ex. A at 68-69).  However, plaintiff did not file a Step 1 grievance alleging excessive force against either Lieutenant Cabrera or Lieutenant Garcia.  Therefore, his excessive force claims against these two defendants are not exhausted.

The Fifth Circuit has recognized that the exhaustion requirement may be excused in rare and extraordinary circumstances.  See e.g. Days v. Johnson, 322 F.3d 863 (5th Cir. 2003), (overruled on other grounds by Jones v. Bock), such a when a prisoner is physically unable to do so.  However, in failing to file a response to defendants' summary judgment motion, plaintiff has failed to argue, let alone offer any facts to suggest, that he should be excused from exhausting his administrative remedies.  There is no evidence to suggests that plaintiff was physically unable to file grievances or that prison officials prevented him from

16

doing so.  To the contrary, plaintiff properly grieved other claims, including his excessive force claim against Officer Thompson.  (<u>See</u> DSJ Ex. A at 68-69).

There is no genuine issue of a material fact that plaintiff has failed to exhaust his administrative remedies concerning his excessive force claims against Lieutenant Garcia and Lieutenant Cabrera, and there is no evidence to demonstrate that exhaustion should be waived.  Thus, it is respectfully recommended that plaintiff's excessive force claims against Lieutenant Garcia and Lieutenant Cabrera be dismissed for failure to exhaust administrative remedies.

### B.      Failure to demonstrate a cognizable claim and qualified immunity.

Defendants argue that they are entitled to summary judgment in their favor because plaintiff has failed to establish that defendants knew of a serious risk of harm to plaintiff, yet ignored that risk, in violation of his constitutional rights.  In addition, defendants maintain that, even if plaintiff could establish that defendants were aware of a serious risk to his health and safety, their actions were reasonable under the facts of this case, and they are entitled to qualified immunity to defeat plaintiff's claims against them in their individual capacities.[8]

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Pearson</u>

---

[8] Although defendants have not moved for summary judgment to dismiss plaintiff's claims against them in their official capacities, there is no dispute that those claims are effectively, claims against the State, and as such, are barred by the Eleventh Amendment. <u>See</u> <u>Aguilar v. Texas Dep't of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir. 1998).

v. Callahan, 555 U.S. 223, 230 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test." Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005).  First he must claim that the defendants committed a constitutional violation under current law.  Id. (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at 236 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

### 1.    Failure to protect.

Plaintiff claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from the November 4, 2010 attempted assault and then failed to transfer him off the McConnell Unit immediately thereafter.

### Step 1 – Constitutional violation.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners.  Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511

18

U.S. 825, 832 (1994)).  A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847).  Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety."  Farmer, 511 U.S. at 835.

### *Analysis.*

The uncontested facts establish that on November 4, 2010, Offender Shoefstaff attempted to assault plaintiff with a spear using a slingshot.  (DSJ Ex. A at 12-14).  However, plaintiff fails to offer any evidence to demonstrate that prior to November 4, 2010, any named defendant knew or should have known that plaintiff was at an increased risk of harm from Offender Shoefstaff or any other source.  At the time, plaintiff was housed in ad. seg. and as such, had limited exposure to the rest of the prison population.  On November 4, 2010, at the time of the attempted assault, plaintiff had not been left alone or unprotected, but instead, was being escorted by two officers to the shower.  (DSJ Ex. A at 19).  Officer McDowell testified that both he and Officer Valdarrama saw Offender Shoefstall attempt to shoot the spear, but that the slingshot broke and the spear did not travel far, and Officer McDowell was able to obtain the spear.  Id.  Plaintiff was immediately taken from the area, evaluated by medical, and placed in transient status pending an investigation, that was initiated that day.  Id. at 16.  Prior to the incident, however, plaintiff had not complained to any defendant or prison official about Offender Shoefstall.  There is no evidence that he had

requested housing away from this offender, or that he had provided officials with any information that he had been threatened or was at risk. Indeed, plaintiff has not suggested that any defendant knew or should have known that he was at risk of harm on November 4, 2010 from Offender Shoefstall.

Following the attempted assault, defendants did recommend that plaintiff be transferred based on the information gleaned from Lieutenant Stroleny's investigation. (DSJ Ex. A at 17). However, the SCC did not support this decision, and concluded that plaintiff was adequately protected with his housing assignment in ad. seg. Id. at 30. The McConnell Unit officials then took the extra protective step of moving plaintiff from F pod, where Offender Shoefstall was housed, to E pod, to avoid future encounters with this particular offender. Id. at 46.

Plaintiff continued to challenge his assignment to the McConnell Unit claiming that his life was in danger, but despite repeated OPIs, plaintiff was unable to offer any additional facts or evidence to substantiate his claims. Indeed, in subsequent investigation, plaintiff repeatedly complained of the November 4, 2010 attempted assault, but he could not identify any additional or more recent threats to either Lieutenant Garcia or Lieutenant Cabrera when they investigated his claims. (DSJ Ex. A at 44, 62). Lieutenant Cabrera noted that plaintiff's allegations amounted to his fears that he was surrounded by ABT and that "they could be anywhere," but he admitted that he had not been threatened. Id. at 46. During Lieutenant Garcia's investigation, plaintiff indicated that he did not have fears concerning other offenders, but that he was concerned now with McConnell Unit staff and medical. Id. at 62.

Lieutenant Garcia investigated plaintiff's allegations and found that medical had discontinued his psych medications, but noted this had been done because plaintiff had been selling his medications. Id. Plaintiff confirmed that he had not been physically or sexually assaulted, nor had he been extorted in any way. Id.

The uncontested evidence establishes that, prior to the November 4, 2010 attempted assault, plaintiff was already being housed in ad. seg. and therefore, in the most secure housing available. Plaintiff did not claim that he was at an increased risk of harm from Offender Shoefstall, and there is no evidence to suggest that any defendant knew or should have known of an increased risk. Following the attempted assault, defendants investigated plaintiff's LID claims and recommended that he be transferred. In addition, they moved him to another pod in ad. seg. to avoid contact with Shoefstall and other known ABT members. Sergeant Mireles confirmed that the STGO had no information concerning threats against plaintiff. (DSJ Ex. A at 47).

Plaintiff contends that he was at risk of serious harm due to his reporting to prison officials about illegal conduct at the unit; however, he fails to demonstrate that any defendant ignored that risk. To the contrary, the evidence shows that defendants addressed the security concerns of plaintiff, while working within the TDCJ's procedures for custody classification and transfer requests. Plaintiff admits that he did not advise defendants prior to November 4, 2010 that he was at risk of harm from Offender Shoefstall, nor had he complained that precautions or procedures concerning his safety were inadequate. Indeed, plaintiff admits that he was unaware that Offender Shoefstall posed a possible risk to him, and therefore, he

never advised any defendant of such risk.  Plaintiff fails to demonstrate that any named defendant knew of, and disregarded, a serious risk of harm to plaintiff's health and safety, and as such, he fails to provide facts that establish deliberate indifference.

### Step 2 – objective reasonableness.

Even if the Court were to find that plaintiff has established a constitutional violation, defendants' are still entitled to summary judgment in their favor because the uncontested evidence establishes that their actions in regards to protecting plaintiff were reasonable. Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004) (actions such as ordering investigations and hearing complaints although ultimately unsuccessful are reasonable responses to address a perceived risk).  The records demonstrate that plaintiff's claims were taken seriously, considered, addressed, and acted upon.  Defendants are entitled to qualified immunity.  Therefore, it is respectfully recommended that the Court grant summary judgment in defendants favor and dismiss with prejudice plaintiff's failure to protect claims.

### 2.    Excessive force claim against Officer Thompson.

Plaintiff claims that on November 17, 2010, Officer Thompson used excessive force against him by pulling his arms through the food tray slots and then punching him in the face.

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant.  See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992); Gomez v.

Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent of the injury suffered; (2)  the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  Gomez, 163 F.3d at 923.

In Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175 (2010) (per curiam), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." Id. at 1180.  The Court grounded this conclusion on the principle that "'the core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 1178 (citations omitted).

In response to plaintiff's excessive force claim, Officer Thompson has offered his affidavit.  (DSJ Ex. I).  Concerning plaintiff's allegations that he pulled and twisted his arm through the food slot and punched his face, Officer Thomson testifies:

> Cooks' allegation is completely false.  I did not use  any force against him on November 17, 2010.  I do recall that at some point in mid-November, 2010, Cooks obstructed his tray slot while I was passing out meal trays.  He refused to obey lawful orders to clear the tray slot for some time, but eventually receding into his cell.  I recall writing Cooks a disciplinary case for refusing to obey lawful orders.  No use of force took place during this incident.
>
> I recall another instance in mid-November 2010, when Cooks was discovered mutilating himself inside his cell.  I recall

escorting Cooks to medical treatment for his self-inflicted
wounds. No use of force took place during the incident.

I also recall that I, like every other officer working in
administrative segregation at the time, was involved in at least
one use of force against Cooks as a member of a cell-extraction
team. I do not recall the specific time or the circumstances of
the use of force, but do recall that it was not in or around
November of 2010.

(DSJ Ex. I at ¶¶ 4 - 6).

Officer Thompson's signed affidavit is some evidence that he never physically abused

plaintiff. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992) ("The movant

accomplishes [meeting its burden] by informing the court of the basis for its motion, and by

identifying portions of the record which highlight the absence of genuine factual issues.").

In addition, the record demonstrates that no use of force report was filed for November 17,

2010, thus substantiating Officer Thompson's testimony.

An investigation was conducted on plaintiff's excessive force claim against Officer

Thompson. (DSJ Ex. A at 74). Officer Thompson denied the charges at that time. Id.

Captain Rodriguez attempted to talk to plaintiff about his allegation, but plaintiff "became

angry and wanted to only speak about his disciplinary court hearing." Id. Investigator

McCullough found that plaintiff "went to medical [for] open area to right forearm on 11-17-

10;" but he did allege at that time that Officer Thompson had caused him the injury. Id. At

the Spears hearing, plaintiff claimed that he did not go to medical following the food slot

incident, although he requested to do so, but instead, that Nurse Campos came to his cell to

check on him. (D.E. at 11). These combined facts and bits of information, Officer

Thompson's affidavit denying use of excessive force, the absence of a written use of force report, and the absence of medical records to suggest anything more than a *de minimis* injury, satisfy the initial burden of Officer Thompson to "demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 325.

Because plaintiff has failed to respond to Officer Thompson's summary judgment motion, he has failed to designate any facts contained in his original complaint or in the record to create a genuine issue of material fact, nor has he articulated how those facts support his claims.  The fact that plaintiff is proceeding *pro se* does not excuse him from his burden, and although his signed and sworn § 1983 complaint and pleadings are proper summary judgment evidence, as the party with the burden of proof, plaintiff must identify genuine issues of material fact to avoid summary judgment in movant's favor.  Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996).   Here, in not filing a response, plaintiff has failed to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[9] Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).  And see Monroe v. Melder, 247 F.3d 241, *3 (5th Cir. 2001) (prisoner who fails to file any opposition to officer's summary judgment motion on excessive force claim fails to identify or demonstrate an issue of material fact that would defeat summary judgment).

---

[9] Of course, plaintiff's failure to oppose summary judgment does not automatically mean a grant of summary judgment in favor of Officer Thompson is appropriate.  See John v. State of Louisiana, 757 F.2d 698, 709 (5th Cir. 1985) ("We hold, therefore, that summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment.").  The burden still rests on the movant to demonstrate the absence of a material fact at issue for trial.  However, since Officer Thompson met his initial burden, plaintiff's failure to respond renders summary judgment appropriate. in this case.

Officer Thompson has presented evidence refuting that the events described by plaintiff in his original complaint ever occurred, thus meeting his burden.  <u>Celotex</u>, 477 U.S. at 323. Plaintiff has failed to refute this with facts in the record, and indeed, the record is consistent with Officer Thompson's testimony.  Thus, there is no genuine dispute as to any material fact, and Officer Thompson is entitled to judgment in his favor as a matter of law.

## VII.   Recommendation.

For the reasons stated herein, it is respectfully recommended that the Court grant defendants' motion for summary judgment (D.E. 39), and dismiss with prejudice plaintiff's failure to protect and excessive force claims against defendants.

Respectfully submitted this 9th day of April, 2012.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

26

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).